UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-MJ-02376-GOODMAN

IN RE SEARCH WARRANT

_____/

ORDER ON EMERGENCY MOTION TO QUASH DNA SEARCH WARRANT

This Order wrestles with the thorny scenario arising from the issuance of a DNA search warrant authorizing law enforcement agents to take two oral cotton swabs from inside a suspect's mouth for DNA analysis and comparison to a firearm (and related items) recovered by police. The legal controversy exists because police did not submit any proof that viable DNA even exists on the firearm (or ammunition or holster) to which the DNA swab would be compared. Some courts believe this absence of proof dooms the probable cause necessary for the warrant. Our Eleventh Circuit Court of Appeals has not issued an on-point ruling, and there are rulings going both ways among some district courts.

The Undersigned previously issued a ruling in a different case and concluded that probable cause was lacking without evidence of testable DNA on the items. But that ruling is not binding on me (or anyone else, for that matter),[1] and my current conclusion

---

[1]      *See e.g.*, *Goosby v. Branch Banking & Trust Co.*, 309 F. Supp. 3d 1223, 1235 (S.D. Fla. 2018) (noting that judge's own rulings are not binding on that jurist) (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131 S. Ct. 2020, 179 L. Ed.2d 1118 (2011) ("A decision of a

has changed. Based on supplemental research and analysis, the Undersigned's legal views on this dicey circumstance are as follows: (1) a *post-search* motion to suppress, as opposed to a **pre-search** motion to quash, is the proper procedural step to challenge a DNA search warrant,[2] and (2) probable cause for a DNA warrant does not require proof that a usable amount of viable DNA exists on the item (such as a firearm) to which the DNA swab is compared.

In the instant case, the Undersigned issued a DNA warrant [ECF No. 1] and the defense attorney representing Dwight Erickson Moss, III filed an emergency motion to quash the warrant. [ECF No. 2]. The United States filed an opposition response [ECF No. 4] and Moss did not file an optional reply (and the deadline to do so has expired). For the two reasons summarized above and for additional reasons outlined in greater detail below, the Undersigned hereby **denies** the emergency motion.

---

federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

[2]    As a practical matter, defendants, suspects, and targets typically do not learn that a magistrate judge (or other judicial officer) has issued a search warrant *before* it is actually executed. Because the prosecutor and/or law enforcement officer approach the magistrate judge privately, without giving notice to the owner or possessor of the property to be searched, the target rarely knows that a warrant has been sought or that one was issued. This type of more-traditional, *ex parte* chronology (where the persons involved learn of the warrant only *after* it is executed) did not occur here because the prosecutor, as a courtesy, notified the Federal Public Defender's Office of the warrant's issuance because that office was representing Moss in a separate supervised release proceeding. Armed with advance notice of the DNA warrant, an Assistant Federal Public Defender ("AFPD") filed an emergency motion to quash before the DNA warrant was executed. More on this in the factual background section.

**Factual Background**

The AUSA handling the investigation provided the AFPD with copies of the warrant and affidavit[3] before the emergency motion was filed. Moss's motion does not take issue with the accuracy of the facts in the affidavit, so the Undersigned deems the facts provided by the United States to be unremarkable and not in dispute.

On October 26, 2023, Moss was arrested while possessing a firearm that day at or near 2227 NW 171st Street in Miami Gardens, Florida. Moss, who is a multiple-time convicted felon with active warrants (that led the U.S. Marshals Service to be seeking to locate him), ran away from law enforcement to avoid apprehension but was captured shortly thereafter with an empty gun holster on his waistband. After law enforcement conducted an area canvas, officers recovered a firearm near the location of Moss's apprehension.

Law enforcement contacted the homeowner of the residence where Moss was apprehended to discuss the firearm they recovered. The homeowner, A.L., provided valid identification, and said that he heard someone running through his yard on the West side of his residence and noticed police officers in front of his home. Law enforcement then explained to A.L. that Moss ran through his yard on the West side of the residence and may have dropped a firearm in the yard. A.L. inspected the firearm that was recovered

---

[3]     The affidavit used to obtain the DNA search warrant is attached as Exhibit A to this Order.

and stated that he is a Correctional Officer and that the firearm recovered by law enforcement did *not* belong to him or his wife. In a written statement, A.L. further advised that his gun(s) and his wife's gun(s) were inside the house, secured.

Moss is a convicted felon, with criminal convictions including Case No. 15-cr-20907-KMW, where he pled guilty to possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). This is the crime he was on supervised release for at the time an arrest warrant was issued for him.

<u>The DNA Warrant Affidavit</u>

On February 27, 2024, Task Force Officer ("TFO") Eric Mourino (with the Bureau of Alcohol, Tobacco, Firearms and Explosives) applied for a DNA search warrant to take two oral cotton swabs from inside Moss's mouth for DNA analysis and comparison to the firearm recovered on October 26, 2023. The Undersigned signed the warrant that same day. The warrant was to be executed by March 12, 2024, and it authorized the use of reasonable force if Moss refused to voluntarily open his mouth.

In his affidavit in support of the warrant application, TFO Mourino summarized the evidence linking Moss to the offense of felon in possession of a firearm. He described how DNA analysis could move his investigation of Moss's gun possession further: that DNA can be left on evidence; that criminals often carry loaded guns to commit violent crimes and for protection; and that the facts gave TFO Mourino reason to believe that Moss had been engaging in precisely that activity at the time of his arrest while carrying

a firearm. The affidavit explained that TFO Mourino had reason to believe that Moss possessed the firearm recovered at the scene and therefore committed a criminal violation of 18 U.S.C. § 922(g)(1) (*i.e.*, convicted felon in possession of a firearm or ammunition).

In addition, the affidavit explained why it is reasonable to believe, and more likely than not, that a human being deposited a cell or cells containing a DNA molecule in the normal course of coming into contact with an item -- including the gun holster on Moss's waistband when he was apprehended and the firearm and ammunition found near to him. It also notes that law enforcement believes Moss tossed the firearm while running away from officers. The affidavit explained why it is reasonable to believe that Moss himself "handled the firearm and ammunition" -- and why it is "reasonable to believe and likely that Moss's DNA may have been deposited on the handgun and/or ammunition." Affidavit, ¶¶ 10, 11.

The affidavit also noted that a DNA lab would be conducting the analysis once law enforcement submitted the evidence along with a DNA sample from the subject (here, Moss).

In addition, the Government included a footnote in the warrant's application affidavit [*id.* at p. 2 n.1], stating that because Moss was recently represented by the Federal Public Defender for his supervised release proceeding,[4] the Government would notify

---

[4]     Moss had already been sentenced for his supervised release violations and is currently incarcerated.

the Public Defender of the warrant's issuance so that his attorneys would have the ability to be present for the warrant's execution (if they chose to do that).

<u>Conferral Between Counsel</u>

The Undersigned issued the warrant on Tuesday, February 27, 2024, and the Government forwarded it to an AFPD that night (based upon her representation of Moss in his unrelated supervised release proceedings). In that email, the Government informed the AFPD that the warrant does not concern any conduct at issue in Moss's previous supervised release matter but that the Government was notifying her in an abundance of caution (*i.e.*, to ask whether she or another AFPD wanted to attend the execution of the warrant). The Government further noted the importance of a timely response, providing the March 12 deadline, and noting that Moss was currently incarcerated at FCI Coleman.[5]

After receiving additional information about the circumstances surrounding the warrant, the AFPD ultimately filed the emergency motion at issue.

Post-reviewing the Government's opposition response, the Undersigned entered an Order [ECF No. 5] staying the execution of the warrant until I could rule on the emergency motion. The Order also advised that the deadline to execute the DNA warrant would be extended if the Court were to deny the emergency motion. *Id.*

---

[5]     FCI Coleman is in the center of Florida, between Orlando and Ocala, approximately 60 miles northeast of Tampa.

**Applicable Legal Standards and Analysis**

The Procedural Propriety of a Motion to Quash a DNA Search Warrant

The United States contends that a motion to quash the already-issued warrant is unavailable here because procedural rules prohibit it and policy considerations militate against it. Moss did not file a reply and his initial motion does not discuss this procedural issue. Nevertheless, his motion argues that the Court should grant the emergency motion to quash, a position which inherently assumes that a motion to quash is a procedurally-available method to mount a challenge.

The United States has the better and more-logical position, and the Undersigned will therefore use that approach here.

"The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant," but instead "by interposing, *ex ante*, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police" and then "providing, ***ex post***, a right to suppress evidence improperly obtained and a cause of action for damages." *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (cleaned up) (authorizing anticipatory search warrants and rejecting the argument "that the executing officer must present the property owner with a copy of the warrant **before** conducting his search") (adding bold emphasis).

Fourth Amendment challenges are limited to "two discrete, post-enforcement settings: (1) a motion to suppress in a criminal case or (2) a damages claim under [civil actions]"). *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (explaining that "a

7

pre-enforcement challenge" to future searches provides no factual context and noting that the "Fourth Amendment is designed to account for an unpredictable and limitless range of factual circumstances, and accordingly it generally should be applied *after* those circumstances unfold, *not before*" (emphasis supplied)).

In fact, courts distinguish between search warrants and subpoenas for purposes of determining what type of challenge is permissible. Subpoenas may be challenged before compliance, while, "[i]n stark contrast, a search warrant is properly challenged **after** it is executed." *In re Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 527, n.39 (3d Cir. 2015) (emphasis added).

Framed by this distinction, it is therefore no surprise that Federal Rule of Criminal Procedure 41, governing search warrants, "only allows for a motion to suppress evidence." *United States v. Crumpton*, No. 3:22-cr-00012, 2023 WL 3611554, at *2 (M.D. Ga. May 23, 2023) (citing Fed. R. Crim. P. 41(h) and pointing out, in an order denying a motion to quash an already-issued DNA warrant, that "numerous courts have concluded that individuals do not have standing to challenge a warrant before it is executed"). *Cf. Carpenter v. United States*, 138 S. Ct. 2206, 2228 (2018) (Kennedy, J., dissenting) ("recognizing the differences between subpoenas and search warrants, including that a subpoena provides 'the recipient the opportunity to present objections before complying,' which is why subpoenas 'need not comply with the procedures applicable to warrants'")).

Adopting Moss's argument here would lead to impractical and illogical results. Indeed, if the subjects of search warrants (such as Moss) could automatically interfere with search warrants by moving to quash them *before* they were executed, then law enforcement investigations would be significantly compromised. Moreover, prosecutors' offices would need to expand their staff in order to address the inevitable onslaught of challenges to warrants pursued by targets and/or subjects.

Confronted by a procedural challenge to his use of a pre-execution motion targeting an already-issued DNA search warrant, Moss cites three cases to support his argument that his motion is procedurally proper: *United States v. Myers*, No. 14-cr-135, 2014 WL 3384697, *7 (D. Minn. July 10, 2014); *United States v. Castillo*, No. 16-cr-20626-Middlebrooks/Garber, ECF No. 20, (S.D. Fla. Oct. 24, 2016); *United States v. Phillips*, No. 14-cr-20162-Lenard/Goodman, ECF No. 20, (S.D. Fla. Apr. 7, 2014).

This Court is not persuaded by those authorities. The procedural posture of each renders it inapplicable to the matter before this Court. *Myers* was a motion to *suppress* evidence derived from the execution of a DNA search warrant, not a motion to quash before execution of the warrant. *Myers*, 2014 WL 3384697, *1. *Castillo* involved a motion to quash filed before a magistrate judge had signed the DNA warrant (unlike here, where the warrant is already issued). *Castillo*, No. 16-cr-20626-Middlebrooks/Garber.[6]

---

[6]      The Undersigned was the magistrate judge who issued the Order in *Castillo.* The ultimate ruling was an Order designating the DNA warrant request as premature because the United States had not demonstrated the existence of usable DNA on the items

Finally, in *Phillips*, the defendant filed an emergency motion to deny or condition law enforcement from swabbing the defendant for DNA after the Government obtained a signed warrant. *Phillips*, No. 14-cr-20162-Lenard/Goodman, ECF No. 20 at 1. After the district court referred the motion to the magistrate judge, but *before* the magistrate judge held a hearing, the Government **executed the warrant**. *Id.* Here, law enforcement has not executed the warrant, with the Undersigned staying execution until the motion is resolved. The Undersigned therefore declines to follow those cases, instead following the authority which deems the motion to be procedurally improper.[7]

<u>Procedure Aside, Was There Nevertheless Probable Cause for the DNA Warrant?</u>

Before discussing the probable cause necessary to obtain a DNA search warrant, it makes sense for us to first highlight what the United States Supreme Court has said

---

in question. I provided the United States with a choice: it could resubmit the affidavit and proposed warrant by making the warrant conditional on first obtaining usable DNA from the items or it could wait to obtain confirmation that usable DNA exists and then resubmit the warrant package. Approximately two and a half weeks later, the District Court issued a notice of change of plea hearing.

In any event, *Castillo* supports Moss's substantive argument (as opposed to the procedural argument about the ability to use a motion to quash an issued warrant) about probable cause -- but, as discussed later in this Order, the Undersigned's view of that issue has evolved, and I no longer agree with my earlier opinion. In other words, I conclude that law enforcement need not first establish that an item has usable amounts of DNA for purposes of obtaining a DNA warrant if probable cause otherwise exists.

[7]    Similar to *Castillo*, the Undersigned was the magistrate judge who issued the Order concerning the DNA warrant in *Phillips*. The explanation about how my perspective about the substantive legal challenge has changed applies here to *Phillips*, as well.

about the acquisition of DNA from buccal swabs.

In *Maryland v. King*, 133 S. Ct. 1958, 1980 (2013), the Court held that when officers make an arrest for a serious offense supported by probable cause and bring the suspect to the station to be detained, that taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police-booking procedure which is reasonable under the Fourth Amendment. After reaching this conclusion, the Supreme Court reversed the decision of the Court of Appeals of Maryland, which set aside a defendant's rape conviction because it found that the cheek swab taken when he was booked was an unreasonable search. *Id*.

The Supreme Court explained that the buccal swab collection procedure is "quick and painless" and involves the swab "touch[ing] inside an arrestee's mouth," requiring no "surgical intrusion beneath the skin." *Id*. at 1967–68. (internal citation and quotation marks omitted). The Supreme Court also described the intrusion of the cheek swab as "a minimal one." *Id.* at 1977.

[**Note:** But Moss's motion contends [ECF No. 2, p. 2] that "the act of swabbing the inside of Mr. Moss's mouth twice is a *highly* invasive search" (emphasis supplied)].

The *King* Court noted that the "ultimate measure of the constitutionality of a government search is reasonableness." *Id.* (internal citation and quotation marks omitted).

The DNA obtained from a buccal swab in *King* was part of a routine booking

11

procedure pursuant to the Maryland DNA Collection Act ("Act"). *Id.* at 1967–70. The Act limits how the information obtained from the swabbing may be used. *Id.* at 1967. No purpose other than identification is permissible. *Id.*

*King* noted that 28 states "and the Federal Government" have adopted laws similar to the Maryland Act authorizing the collection of DNA from some or all arrestees. *Id.* at 1968. But neither party here has addressed this point, and it seems that Moss's DNA was not obtained upon his recent arrest because, if it had, then the United States would not now be seeking a warrant to compel a DNA sample from a swab.

So, under *King,* the United States could have obtained DNA from Moss if that procedure was part of a routine booking process. Therefore, the question now is whether the United States can specifically select Moss for a DNA swab to further its investigation and possible prosecution of him. *United States v. Evans*, 427 F. Supp. 3d 87, 92–93 (D.D.C. 2019) (when the Government seeks a buccal swab, not as part of a routine booking procedure, but for the purpose of obtaining evidence, the Government is required to show individualized suspicion).

*King*, however, does not answer that question. In *King*, the Court noted that the purpose of the routine swabbing is in "knowing for an absolute certainty the identity of the person arrested, in knowing whether he is wanted elsewhere, and in ensuring his identification in the event he flees prosecution." 133 S. Ct. at 1977. None of those permissible, legitimate purposes are at issue here.

The grounds relied upon in *King* are all legitimate reasons to justify a "routine, administrative step[] incident to arrest – *i.e.*, . . . book[ing], photograph[ing] and fingerprint[ing]." *Id.* at 1978 (internal citation and quotation marks excluded). The Court later noted that "DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure." *Id.* at 1980. But the request for Moss's DNA is not part of any routine booking procedure. Instead, it is a fact-specific, case-specific application based on the theory that there is probable cause to believe that the DNA obtained from him will yield relevant evidence.

So did I have probable cause to issue the DNA warrant for Moss even though the United States did not demonstrate that a usable amount of viable DNA exists on the firearm, ammunition, and holster which would be compared? The answer is **"yes."**

Probable cause is simply a reasonable ground for belief amounting to less than a *prima facie* case but more than mere suspicion. *United States v. $242,484.00,* 389 F.3d 1149, 1160 (11th Cir. 2004) (*en banc*).

To determine whether a warrant was based on probable cause, a reviewing court must make only a practical determination based on a totality of the circumstances whether there is a "fair probability" that evidence of a crime will be found at the premises to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"An affidavit supporting a search warrant is presumed valid." *United States v. Whyte*, 928 F.3d 1317, 1333 (11th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

Therefore, the affidavit submitted to me to justify the DNA warrant is presumed valid (and Moss does not argue that the affidavit was false or misleading).

The Supreme Court has repeatedly stated that the review "process does not deal with hard certainties, but with probabilities . . . the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Gates,* 462 U.S. at 231–32 (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)).

To be sure, courts appear to be split on the issue of whether there is probable cause to believe that a defendant's DNA would yield evidence of wrongdoing if there was no proof of a usable DNA profile from which to compare the defendant's DNA. *See United States v. Alvin*, No. 22-20244, 2023 WL 9057923 (S.D. Fla. Dec. 15, 2023), at *1 (S.D. Fla. Dec. 15, 2023) (noting that "all parties agree that there is no binding law" and that there is "only limited non-binding case law, some of it from this district and most of it from other districts -- but that the overall legal landscape is conflicting").[8]

Nevertheless, several district courts have held that probable cause supported a

---

[8]     The Undersigned also decided *Alvin.* After noting the unsettled law and the conflict among trial courts, I opted to not decide the issue there because the good faith exception applied, rendering the initial probable cause issue academic. We do not have that flexibility here, as the warrant has not yet been executed and the threshold issue of probable cause needs to be resolved. Nevertheless, I mentioned in *Alvin* that I viewed the cases requiring proof that viable DNA exists as "persuasive." 2023 WL 9057923 at *7. But, as explained below, I no longer have that opinion and I now agree with the United States that probable cause for a DNA warrant does not require proof that viable DNA exists.

DNA buccal swab absent proof that viable DNA exists on the item to which the buccal swab was to be compared. *See, e.g., United States v. Burkhalter*, No. 18-cr-00036-1, 2023 WL 2653388, at *5 (W.D. Mo. Mar. 27, 2023) (noting split of authority but concluding that "this Court does not believe that the Fourth Amendment requires the [G]overnment to confirm that the DNA swabs collected will yield a viable DNA sample before swabbing defendant Burkhalter for DNA"); *United States v. Williams*, No. 17-cr-00238, 2019 WL 4276992, at *3 (M.D. Tenn. Sept. 10, 2019) ("The Court doubts that a warrant affidavit to obtain a buccal swab must allege the existence of a comparison sample that is of the right type or adequate quality to be used for comparison purposes, as [the] [d]efendant contends[.]");[9] *United States v. Sedillo*, 297 F. Supp. 3d 1155, 1184 (D.N.M. Nov. 7, 2017) (upholding a DNA warrant that "lack[ed] direct evidence that the United States will find testable DNA on the items, [but] contain[ed] circumstantial evidence to that effect"); *United States v. Lopez-Castillo*, No. 15-cr-279, 2016 WL 1611582, at *4 (D. Minn. Apr. 22 2016) (denying motion to suppress and relying on the Supreme Court's ruling in *King*, 133 S. Ct. at 1968–69, that buccal swabs for DNA are minimally intrusive, especially for those already incarcerated with reduced expectations of privacy, causing it to reject the defendant's

---

[9]     Similar to my approach in *Alvin*, the *Williams* Court ultimately chose to not decide the issue because it held that the good faith exception to the exclusionary rule would defeat the motion to suppress even if were to follow Defendant's suggested interpretation of Fourth Amendment law on warrants for DNA buccal swabs.

similar arguments about needing a testable sample pre-warrant);[10] *United States v. Wilhere*, 89 F. Supp. 3d 915, 919 (E.D. Ky. 2015) (finding probable cause to take a defendant's DNA through a buccal swab because the supporting affidavit explained that the defendant "is suspected of murder and . . . there might be DNA on the victim's body that could be compared to [the] [d]efendant's DNA").

The Undersigned acknowledges that the United States has not established that the firearm, ammunition, and holster do in fact have usable amounts of testable DNA, but that is not required. Instead, it is sufficient if the United States shows "that there will likely be a DNA sample against which to test Defendant's." *United States v. Abeyta*, No. 19-CR-401, 2020 WL 5439801 at *2 (D.N.M. Sept. 10, 2020) (granting government's motion to compel DNA sample from in-custody suspect in sexual assault case); *see also United States v. Ausby*, No. 72-67, 2019 WL 3718942, at *2 (D.D.C. August 7, 2019) (granting the Government's motion to require defendant to submit buccal swabs and rejecting defense argument that the Government has not shown "that the vaginal and rectal slides contain DNA of a sufficient quality to generate a profile suitable for comparison"); *United States v. Proctor*, 230 F. Supp. 3d 1, (D.D.C. 2017) (rejecting defense argument raised here and holding that "[t]he Fourth Amendment does not, in this case, require the Government to establish a likelihood that a saliva sample will supply evidence in advance of its

---

[10]   But the *Lopez-Castillo* Court determined that it need not decide the issue because the good faith exception defeated the suppression motion.

collection").

Under the factual scenario here, there is probable cause to believe that Moss possessed (and then tossed) the firearm, and that he may have deposited usable DNA on the firearm, ammunition, and holster.

## Conclusion

The Undersigned **denies** Moss's emergency motion to quash the DNA warrant. The United States shall have 14 days from the date of this Order to execute the DNA warrant. Defense counsel may arrange to be present when the swabs are taken. This Order does not prevent Moss from later filing a motion to suppress the results of the DNA warrant on grounds other than the lack of evidence that usable DNA existed before the swabs were taken.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on March 18, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record